65 A.3d 818

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. A.R., DEFENDANT–RESPONDENT.

Argued November 27, 2012—Decided May 16, 2013.

544

*Brian J. Uzdavinis,* Deputy Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*Jason A. Coe,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* Public Defender, attorney; *Sylvia M. Orenstein,* Assistant Deputy Public Defender, on letter in lieu of brief).

Judge CUFF (temporarily assigned) delivered the opinion of the Court.

Over the years, the method of creating a verbatim record of a trial has changed. Since at least 1948, a certified shorthand reporter created a verbatim record of trial proceedings. If a jury requested to review the testimony of a witness, the court reporter identified the relevant portions of the testimony and read it to the jury. The use of audio-recording equipment to create the verbatim trial record was introduced in the trial courts in 1986. Once universal, the certified shorthand reporter is now a rarity in our trial courts.[1] In an audio courtroom, a readback of testimony is not in the sterile voice of the court reporter but in the voices of the questioner and witness. Some courtrooms are also equipped to create and maintain a video and audio record of the proceedings. Most readbacks, however, are confined to the audio record.

As the developments for creating a verbatim trial record evolved, standards for preserving interviews of witnesses and suspects also changed. Interviews of young victims of sexual

[1] As of April 1, 2013, there were forty-two certified shorthand reporters assigned to trial courts; there were 385 judges assigned to the trial divisions of the Superior Court and the Tax Court.

assault and custodial interrogations and statements of suspects now must be video recorded. The video recordings of interviews are often played at trial and admitted in evidence.

A request by a deliberating jury to review testimony is a common occurrence. An audio or video playback might appear to be the best response to a jury request to review certain testimony. Those playbacks, however, give rise to a concern that their use may compromise the fairness of the trial.

In this appeal, we address the issue of whether video recordings of statements given by a defendant or a victim played to the jury during trial, and marked as trial exhibits and admitted in evidence, may be given to the jury to review in whole or in part and for however many times it desires in the jury room during deliberations.

Here, defendant was charged with aggravated sexual assault of his nine-year-old great-niece. Two video-recorded statements, one of the victim and one of defendant, were played at trial and introduced in evidence. During jury deliberations, the jury requested to review the video recording of the victim's and defendant's statements. The jury asked for and the trial court, with the consent of both counsel, provided the recordings and the video player to allow review of the statements during deliberations. Although the video recording of a defendant's statement or a victim's statement is admissible evidence, playbacks of such testimony have the capacity to permit a jury to place undue emphasis on a single item of evidence. An audio recording permits the jury to hear every inflection, every hesitation, and every equivocation in the voice of the witness. A video recording magnifies the effect of a playback of testimony. Repeated jury review of a video-recorded statement is tantamount to a second, third, or even fourth appearance of the same witness at trial.

For those reasons, we held in *State v. Burr*, 195 *N.J.* 119, 948 *A.*2d 627 (2008), and reiterated in *State v. Miller*, 205 *N.J.* 109, 13 *A.*3d 873 (2011), that a video-recorded statement must be replayed in open court under the direct supervision of the judge. We

repeat that rule today. In the unique circumstances of this case, however, the decision to permit unfettered access to the video-recorded statements during deliberations cannot be considered plain error, and that decision does not warrant reversal of the conviction. We, therefore, reverse.

I.

On March 10, 2007, nine-year-old T.P. slept at her great-grandmother's apartment. T.S.R., T.P.'s great-aunt, and her hus-band, defendant A.R., also stayed at the apartment that evening. T.P. slept on one couch, her great-aunt slept on another couch, and defendant slept on an air mattress on the floor, all in the living room.

T.P. was prone to snoring, and her family members had been instructed to flip her onto her stomach to cease her snoring. During the March 10, 2007 sleepover, defendant awoke to T.P.'s snoring and arose to turn her onto her stomach. T.P. was wearing a nightgown without any underpants.

According to T.P., she awoke because she felt someone pull on her nightgown. Then she described a feeling as if someone "was putting lotion on me. And then he, [defendant] has put his hand through my privacy part. . . ." Then, she reported that defendant lifted her legs and licked her vaginal area.

T.P. left the couch and went into her great-grandmother's room. Defendant's wife, who remained asleep on another couch in the living room, awoke when the door to the bedroom slammed. She got up, went into the bedroom, and T.P. told her and her great-grandmother that defendant touched her inappropriately. T.P. testified that she told her great-grandmother that she "felt some-thing wet and that I knew it was [defendant]." The next day, defendant's wife confronted him, but he denied T.P.'s allegation.

Defendant's wife informed T.P.'s father of the allegation, and she and T.P.'s father took the child to the police station on the morning of March 12, 2007. There, defendant's wife informed a

detective of T.P.'s allegation. T.P. was taken to the prosecutor's office, where she was interviewed by a prosecutor's investigator specially trained in conducting such interviews. T.P.'s father accompanied her to the prosecutor's office but was not present during the interview.

During the interview, which was video recorded and played for the jury at trial, T.P. told the investigator that she felt defendant put the side of his hand in the groove between the cheeks of her buttocks and move his hand from back to front. At trial, T.P. testified that she did not recall stating that defendant's hand moved back and forth, but T.P. testified that is what she felt.

Following the interview, T.P. and her family returned to the local police station where an appointment for a physical examination was made for her. The examination occurred approximately ten days following T.P.'s initial report. The examining physician reported two small areas of irritated skin on T.P.'s labia and no evidence of penetration. The physician opined that her findings were consistent with T.P.'s report that someone had licked that area.

Defendant was arrested, administered his *Miranda*[2] rights, and interrogated by two detectives on the afternoon of March 12, 2007. The interview, which was video recorded and played at trial, occurred in two parts. In the first part of the interview, defendant spoke at length about financial, legal, and family problems. He constantly denied that he touched T.P. other than to roll her onto her stomach twice to stop her snoring. He also suggested that the allegation of sexually inappropriate conduct with T.P. was generated by T.P.'s great-grandmother, who did not like him.

After a short break, the detectives returned to the room, and the lead investigator informed defendant that he believed defendant had touched T.P.'s buttocks and licked her vagina. The investigator stated that he found T.P. completely credible. He

---

[2] *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

informed defendant that T.P. would not have told police what defendant did unless it actually happened. Within minutes, defendant admitted that in a "moment of weakness" he lifted T.P.'s legs and grabbed "her booty." He also admitted that he placed his mouth on her vagina. He denied penile or digital penetration.

A grand jury indicted defendant on four charges: two counts of first-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a)(1) (Counts 1 and 2); second-degree sexual assault, *N.J.S.A.* 2C:14–2(b) (Count 3); and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a) (Count 4).

Defendant testified at trial. He acknowledged that he admitted to engaging in sexual conduct with T.P. during his interview. He insisted, however, that his admission of guilt had been untruthful. He claimed he did no more than lift T.P., roll her onto her stomach to stop her snoring, and cover her when he realized that her nightgown had risen above her waist and she was not wearing underpants.

The video recordings of the interviews of T.P. and defendant were marked as trial exhibits and admitted in evidence. During jury deliberations, the video recordings were initially stored in the courtroom, outside the jury room. The jury sent out a note that read:

> Your Honor, we request the DVD testimony of [A.R.] after the two detectives came back into the room. Also [T.P.]'s interview taken at [Detective] Chapman's in the small room, the VHS. And can view these so that we can pause and restart them for our deliberations. Thank you.

The judge brought the jury into the courtroom. The following colloquy occurred:

> THE COURT: . . . All right, what I'm going to do is this, since we have it set up here I'm going to play it through here and if you want us to start and stop it . . . I'm reluctant to put everything in there and just leave you with it in case the thing malfunctions or whatever.
>
> If there's some portion you want played back here, [the prosecutor] can stop and start it for you. Or is it that you wanted to be able to play this over and over again as you deliberated? That's what you wanted to do?
>
> JUROR: Yes.
>
> THE COURT: All right, let me see the attorneys at sidebar.

(Sidebar conference)

THE COURT: Is there an objection to them taking the machine in there and let[ting] them utilize it?

[DEFENSE COUNSEL]: I consider it ... the equivalent of statement[s] on paper [that] are marked into evidence and brought back there. They might be able to look at that.

THE COURT: We've looked at the DVDs and the VHS, there's nothing on there [that] was not played for them, correct?

[PROSECUTOR]: Yes

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Yes.

THE COURT: Then if that's what their request is I really don't see an issue on it.

The judge instructed the court officer to set up the television and video player in the jury room for the jury to watch defendant's and T.P.'s video-recorded statements. The jurors were allowed to play the video recordings in the jury room at their discretion and discuss the video recordings as they watched them. The jury found defendant guilty on all charges.

Defendant moved for a new trial arguing the jury's use of the video recordings in the jury room was a miscarriage of justice. The trial court denied defendant's motion. It analyzed the motion in accordance with *State v. Burr, supra,* which this Court decided during the course of defendant's trial, seven days before the video-recording issue arose in this case. The trial judge distinguished this case from *Burr* because the jury was adamant about needing the video recordings in the jury room, the parties did not object, the video recordings were admitted into evidence and previously played in open court, there were no transcripts of the video recordings, the jury was given both of the video-recorded statements, defendant's in-court testimony was still fresh in the jury's mind, and a playback in open court would be insufficient because the jury wanted to deliberate while watching the video recordings.

The trial judge also expressed a concern that to pursue any other course would have been unresponsive to the jury's request. The judge reasoned as follows: "It is this [c]ourt's position that to have manufactured a response providing that which was not asked

for, if available[,] would have amounted to the [c]ourt usurping the jury function as finder of fact." Citing those differences, the trial judge concluded that, even though it did not follow *Burr*'s procedural guidelines, the error was harmless. The court then sentenced defendant to a fifteen-year prison term, subject to the No Early Release Act (NERA),[3] *N.J.S.A.* 2C:43-7.2, and Megan's Law, *N.J.S.A.* 2C:7-1 to -23.

The Appellate Division reversed defendant's conviction, concluding that the trial judge properly permitted the jury access to the video-recorded statements of the victim and defendant. The panel determined, however, the trial judge erred in permitting unrestricted access to those statements. It noted that access to both statements did not cure the threat that the jury would unfairly emphasize one video statement over other testimonial evidence. Furthermore, the panel expressed its concern that unfettered access "strips the trial judge of the ability to maintain a record of what was viewed and how often it was viewed."

The panel also held that unfettered access to the video statements during deliberations deprived defendant of the opportunity to be present at a critical stage of the proceedings. Moreover, the panel determined his absence must be considered a structural error affecting the very foundation of the jury trial, which requires reversal with no obligation to demonstrate prejudice. The panel concluded the trial court's decision constituted plain error that was capable of producing an unjust result. Accordingly, it reversed defendant's conviction and remanded for a new trial.

We granted the State's petition for certification. 209 *N.J.* 100, 35 *A.*3d 682 (2012).

## II.

The State argues the Appellate Division improperly reversed defendant's conviction. It contends that review by a jury of video-

---

[3] In doing so, the trial judge merged Counts 2, 3, and 4 with Count 1 and imposed a fifteen-year prison term on Count 1. He also imposed all appropriate fines, penalties, and assessments.

recorded statements already viewed during trial cannot be considered error, let alone plain error. The State argues that review by the jury of those video recordings out of the presence of defendant cannot be considered structural error. Finally, the State claims any failure to follow the *Burr* guidelines must be considered harmless, due not only to the lack of objection but also to the encouragement by defense counsel for the jury to view the video recordings.

Defendant argues the Appellate Division correctly determined the trial court committed reversible error by failing to follow the *Burr* guidelines. Defendant maintains the jury's unfettered access to the video recordings constituted undue prejudice because the jury was unmonitored and, therefore, there was a risk it overemphasized the video-recorded statements. Defendant also contends the video replay was a critical stage of the proceeding and he was denied the right to be present during that stage. Defendant submits the video replay in his absence is a structural error for which he need not demonstrate prejudice.

### III.

The trial featured two video-recorded statements. One statement was of the victim, the other of defendant. The trial court admitted both video-recorded statements in evidence. The issue of juror access to video-recorded statements of child sexual abuse victims during deliberations was first addressed in 1993 in *State v. Michaels*, 264 *N.J.Super.* 579, 625 *A.*2d 489 (App.Div.1993), *aff'd on other grounds*, 136 *N.J.* 299, 642 *A.*2d 1372 (1994). In *Michaels*, an early childhood educator was charged with multiple acts of sexual misconduct involving twenty young students. *Id.* at 585, 589, 625 *A.*2d 489. The Appellate Division confronted many issues, including the admissibility of Child Sexual Abuse Accommodation Syndrome evidence, the limits of any opinion offered by a child abuse expert, the manner in which the testimony of young victims should be presented, suggestiveness of pretrial interviews and its impact on in-court identification and relation of details of

incidents, and juror access to video-recorded statements during deliberations. *Id.* at 593–645, 625 *A.*2d 489.

In *Michaels,* the jury requested to view the video-recorded testimony of each child. *Id.* at 642, 625 *A.*2d 489. Analogizing the video-recorded testimony to a request for a reading of testimony that had been recorded stenographically, the trial judge permitted the tape of each child's testimony to be played in its entirety in the courtroom. *Ibid.* Addressing juror access to video-recorded trial testimony of the child victims during deliberations, the Appellate Division noted that issue was one of first impression in this State, canvassed the law in other jurisdictions, and stated that it agreed "with the line of cases holding that it is error to allow the jury to have video-recorded testimony and a means of playing it *in the jury room.*" *Id.* at 643, 625 *A.*2d 489. The panel declined, however, to hold that it was never permissible to grant a jury request for a replay of video-recorded testimony in its entirety in open court in the presence of the defendant. *Id.* at 644, 625 *A.*2d 489.

The panel proceeded to observe "that videotaped testimony provides more than conventional, transcribed testimony." *Ibid.* The panel noted that the jury views not only the image of the witness but also "[t]he witness's words and all of the animation, passion, or sympathy originally conveyed...." *Ibid.* Although the panel declined to hold that the replay of video-recorded testimony for the jury in its entirety in open court was prejudicial per se because it essentially brings the witness before the jury a second time, it urged caution and provided guidance to trial judges when confronted with such a request. *Id.* at 644–45, 625 *A.*2d 489. The panel instructed trial judges to determine whether a readback from a transcript would suffice or whether the video-recorded replay responds to a specific inquiry or concern, and then it emphasized the need to balance the jury's request against any prejudice. *Ibid.*

This Court addressed the issue of whether a video-recorded pretrial statement, introduced in evidence, may be reviewed by the

jury during deliberations in *Burr, supra,* 195 *N.J.* 119, 948 *A.*2d 627. In *Burr,* a jury convicted the defendant of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b), and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a). *Id.* at 122, 948 *A.*2d 627. The victim, a young female piano student, accused the defendant of touching her inappropriately during lessons. *Ibid.* We observed that the precise issue had never been addressed by either this Court or the Appellate Division. *Id.* at 132, 948 *A.*2d 627. We noted the close analogy of that request to the request made in *Michaels. Ibid.* On the other hand, we also noted that the video recording in *Burr* had been marked as an exhibit and received in evidence, unlike the video recordings in *Michaels. Id.* at 133, 948 *A.*2d 627. Because exhibits admitted in evidence are normally submitted to the jury during deliberations, we were required to confront the issue of whether the jury should have unfettered access to that kind of evidence during deliberations. *Id.* at 134, 948 *A.*2d 627. We concluded that it should not have unfettered access due to the significant differences between a video-recorded pretrial statement and demonstrative exhibits. *Ibid.* The Court stated:

> Unlike a demonstrative exhibit, the videotape contains hearsay statements offered for the truth of the matter asserted. Moreover, the videotape is powerful evidence for the jury to see again, if it is not placed into context. We therefore share the Appellate Division panel's concern that allowing a jury unfettered access to videotaped witness statements could have much the same prejudicial effect as allowing a jury unrestricted access to videotaped testimony during deliberations. The danger posed is that the jury may unfairly emphasize [the victim's] videotaped statements over other testimony presented at trial, including her own cross-examination. . . . We simply hold that, in the future, if a request is made by a jury to replay a videotaped pretrial interview that has been introduced into evidence, the precautionary procedures adopted in *Michaels* must apply to the videotaped out-of-court statements.
>
> [*Ibid.*]

This Court then endorsed the procedures first identified in *Michaels* that must be followed when a jury asks to review a video-recorded out-of-court statement introduced in evidence. *Id.* at 135, 948 *A.*2d 627. We directed:

> If on remand the trial court is faced with a request by the jury to have a replay of the videotaped pretrial interview of [the victim], the court first should inquire of

the jury whether it would be satisfied with a readback of [the victim]'s testimony. If the jury persists in its request to view the videotape again, then the court must take into consideration fairness to the defendant. The court must determine whether the jury must also hear a readback of any direct and cross-examination testimony that the court concludes is necessary to provide the proper context for the video playback. Furthermore, we reiterate that the court retains the ultimate discretion to deny the playback request, although that would require a showing that the consequential prejudice to the defendant from the playback could not be ameliorated through other means. And, finally, any playback of the videotape must occur in open court, along with the readback of related testimony that the court shall require.

[*Ibid.* (footnote omitted).]

In *Miller*, this Court reinforced and built on the precautionary measures articulated in *Burr*, *Michaels*, and other cases. 205 *N.J.* at 122–24, 13 *A.*3d 873. We emphasized that the trial court's focus in response to a request for a review of trial testimony "should be on the proper controls and limits needed to insure a fair proceeding, not the medium used to create a record." *Id.* at 122, 13 *A.*3d 873. We recognized the broad discretion reposed in the trial court to control readbacks and playbacks and recommended further precautionary measures. *Id.* at 122–23, 13 *A.*3d 873. Those precautions include eliminating sidebars and inadmissible testimony to which counsel objected, providing the entirety of the requested testimony, including direct and cross examination, and eliminating angry outbursts or emotional conduct that may appeal to emotions. *Ibid.*[4] The rule announced in *Burr* and *Michaels*, and reiterated in *Miller*, is consistent with the rule in many other jurisdictions. All recognize that the response to a jury's request for a readback of testimony or a replay of a video recording is

---

[4] We also discussed the replay of a video-recorded confession to the jury during deliberations in *State v. W.B.*, 205 *N.J.* 588, 17 *A.*3d 187 (2011). Because the video recording had not been admitted in evidence, the trial judge did not follow the *Burr* guidelines. *Id.* at 622, 17 *A.*3d 187. We concluded the playback of the video recording at the jury's request could not be considered an abuse of discretion by the trial judge. *Id.* at 623, 17 *A.*3d 187. We noted that the trial had been video recorded; therefore, the judge could not utilize a transcript of the statement in place of the video recording. *Ibid.* Moreover, the replay occurred in open court and defense counsel had urged careful consideration of the defendant's statement. *Ibid.*

vested in the discretion of the trial judge. *See, e.g., United States v. Binder,* 769 *F.*2d 595, 600 (9th Cir.1985) (decision to replay video-recorded exhibits during jury deliberations committed to discretion of trial judge), *overruled in part by United States v. Morales,* 108 *F.*3d 1031 (9th Cir.1997); *Young v. State,* 645 *So.*2d 965, 967 (Fla.1994) (same); *State v. Kraushaar,* 470 *N.W.*2d 509, 515 (Minn.1991) (same); *Chambers v. State,* 726 *P.*2d 1269, 1275 (Wyo.1986) (same). Most courts expressly hold that any replay of video-recorded statements or testimony must occur in open court. *See, e.g., Summage v. State,* 248 *Ga.App.* 559, 546 *S.E.*2d 910, 913 (2001) (trial court erred by allowing submission of video-recorded statement to jury); *Young, supra,* 645 *So.*2d at 968 (if requested by jury, trial judge may permit jury to view video-recorded statement of witness twice in open court); *Martin v. State,* 747 *P.*2d 316, 320 (Okla.Crim.App.1987) (error to submit video-recorded testimony of child sex abuse victim to jury for unrestricted and repeated viewing during deliberations); *Chambers, supra,* 726 *P.*2d at 1276 (video-recorded statements may never be submitted to jury for unsupervised viewing). In *Martin,* the Oklahoma Court of Criminal Appeals explained the unique problems posed by video-recorded statements of critical witnesses. 747 *P.*2d at 319. The court observed

> [t]hat there is an important distinction between having parts of testimony dispassionately read to a jury and allowing the jury to hear, and see, the entire testimony of an empathetic witness, such as a child describing a painful experience in his young life. The possibility for abuse is, we believe, substantially increased with video technology. This being so, a trial judge should carefully consider the alternatives before placing the video in the unrestrained hands of the jury during deliberation. We believe that the risk of prejudice is great in this situation. [*Ibid.*] [5]

---

[5] *State v. Koontz,* 145 *Wash.*2d 650, 41 *P.*3d 475 (2002), illustrates the problem associated with a replay of video-recorded testimony. In *Koontz,* the entire trial had been video recorded. *Id.* at 476. Due to the technique used to create the trial video recording, the trial record featured multiple camera angles capturing some nontestimonial elements, such as a view of the defendant as he listened to the testimony. *Id.* at 477. The court noted that special care must be taken before video-recorded testimony may be replayed. *Id.* at 479–80. The court

Courts in other jurisdictions have ordered a new trial when the jury had unfettered access to video-recorded statements and the circumstances clearly indicated the jury had viewed the video-recorded evidence multiple times. *See, e.g., Binder, supra,* 769 *F*.2d at 600–01; *DeBella v. People,* 233 *P*.3d 664, 668–69 (Colo. 2010); *Young, supra,* 645 *So*.2d at 967–68. In *DeBella,* the Colorado Supreme Court emphasized that the trial judge failed to give a limiting instruction, proceeded without a request from the jury to view the video recordings, and failed to obtain counsel's agreement to permit jury access to the video recordings. 233 *P*.3d at 668. In addition, the nature of the video and its centrality to the case left the court "with 'grave doubts' as to whether the jury's unencumbered access to the video recording during its deliberations" undermined the fairness of the trial. *Ibid.*

## IV.

The State urges that any error that occurred in this trial is no more than a procedural lapse and certainly not structural error. We agree.

The right to be present at trial to confront witnesses or evidence against a defendant is protected by the Sixth Amendment to the United States Constitution, as applied by the Fourteenth Amendment, and by Article I, Paragraph 10 of the New Jersey Constitution. *United States v. Gagnon,* 470 *U.S.* 522, 526, 105 *S.Ct.* 1482, 1484, 84 *L.Ed.*2d 486, 490 (1985); *State v. Hudson,* 119 *N.J.* 165, 171, 574 *A.*2d 434 (1990). The presence of a defendant at trial is a condition of due process to assure a fair and just hearing, which is protected by the Fourteenth Amendment. *Hudson, supra,* 119 *N.J.* at 171, 574 *A.*2d 434. Vindication of that right requires a defendant to be present at every stage of the proceedings, " 'whenever ... presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the

---

suggested measures to prevent undue emphasis on the replayed testimony and presentation in open court. *Id.* at 479.

charge.' " *State v. Dellisanti,* 203 *N.J.* 444, 453, 4 *A.*3d 531 (2010) (alteration in original) (quoting *Snyder v. Massachusetts,* 291 *U.S.* 97, 105–06, 54 *S.Ct.* 330, 332, 78 *L.Ed.* 674, 678 (1934), *abrogated in other part by Malloy v. Hogan,* 378 *U.S.* 1, 84 *S.Ct.* 1489, 12 *L.Ed.*2d 653 (1964)); *accord R.* 3:16(b). The right of a defendant to be present at trial permits a defendant to consult with counsel and to assist with the presentation of the defense and cross examination, while also assuring public confidence in the trial process. *Hudson, supra,* 119 *N.J.* at 172, 574 *A.*2d 434.

Over the years, this Court's cases addressing a defendant's absence from trial have fallen into two categories. One category concerns circumstances in which a defendant's absence deprives the accused of his or her confrontation rights. *See, e.g., State v. Byrd,* 198 *N.J.* 319, 353–57, 967 *A.*2d 285 (2009) (trial judge made credibility determination following receipt of testimony at in camera evidentiary hearing from which defendant and defense counsel were excluded); *State v. W.A.,* 184 *N.J.* 45, 64–67, 875 *A.*2d 882 (2005) (defendant excluded from sidebar questioning of prospective juror during voir dire process). The other category concerns circumstances in which a defendant's confrontation rights are not implicated but, instead, his or her participation in the defense is the issue. *See, e.g., State v. Colbert,* 190 *N.J.* 14, 17, 20–24, 918 *A.*2d 14 (2007) (defendant excluded from sidebar examination of witnesses during voir dire process but effective lawyer-shuttle system permitted consultation on prospective jurors); *State v. Morton,* 155 *N.J.* 383, 444–45, 715 *A.*2d 228 (1998) (defendant absent from argument of pretrial motions confined to legal issues). In the former cases, prejudice is readily assessed; in the latter, the existence of prejudice requires a careful review of the record. This Court has not adopted a per se approach in either category of cases. *Dellisanti, supra,* 203 *N.J.* at 459, 4 *A.*3d 531.

◼ Here, although we do not approve of the unfettered access to the video-recorded statements of the victim and defendant in the jury room during deliberations, we conclude that the procedure utilized cannot be said to undermine the trial process. The

process, although flawed, simply did not implicate either defendant's right to confront evidence or witnesses against him or to assure a fair trial process. *See Young, supra,* 645 *So.*2d at 968 (allowing video recording to go into jury room during deliberations not fundamental error).

The jury reviewed the exhibits during its deliberations. No one other than the jurors had a right to be present during that stage of the proceedings. The isolation of the jury and the confidentiality of its discussions are hallmarks of the deliberative process. *See State v. LaFera,* 42 *N.J.* 97, 106, 199 *A.*2d 630 (1964). While defendant had the right to be present during critical stages of the trial, *see Dellisanti, supra,* 203 *N.J.* at 453–56, 4 *A.*3d 531, defendant had no right to oversee the actual deliberations of the jury, *see State v. Neulander,* 173 *N.J.* 193, 221, 801 *A.*2d 255 (2002), *cert. denied,* 537 *U.S.* 1192, 123 *S.Ct.* 1281, 154 *L.Ed.*2d 1027 (2003). Stated differently, his presence did not have a reasonably substantial relation to his opportunity to defend the charges against him. When the case reached the stage that the jury commenced its deliberations, defendant's ability to influence the course of events was complete and his fate was in the hands of the jury and in its assessment of the quality of the evidence submitted in support of and in defense of the charged offenses.

## V.

### A.

Having concluded that the procedure utilized here is not structural error does not end our review of the manner in which the jury viewed the video recordings. Exercising our supervisory authority, we have prescribed procedures and imposed obligations in various contexts to further the ultimate goal of a fair trial. In *Burr,* we recognized the unique features of audio- and video-recorded evidence. Although the decision to permit replays of testimony is vested in the discretion of the trial judge, that discretion is not without limits. *Miller, supra,* 205 *N.J.* at 122, 13

A.3d 873; *Burr, supra,* 195 *N.J.* at 135, 948 *A.*2d 627. We reiterate the need to take specific measures to avoid the dangers associated with video-recorded evidence and expressly disapprove permitting unfettered access by the jury to video-recorded statements of witnesses or a defendant during its deliberations.

*Rule* 1:8–8 provides that "[t]he jury may take into the jury room the exhibits received in evidence. . . ." The Rule does not distinguish between testimonial evidence, such as statements or depositions, and non-testimonial evidence. Read literally, all exhibits, without exception, may be given to the jury.

Notwithstanding the unqualified language of *Rule* 1:8–8, video-recorded statements have been considered a different type of exhibit, a hybrid that is both a demonstrative exhibit and testimony. *Burr, supra,* 195 *N.J.* at 134, 948 *A.*2d 627. Moreover, a replay of a video recording is tantamount to having the witness testify a second time. *Michaels, supra,* 264 *N.J.Super.* at 644, 625 *A.*2d 489. The video recording is the functional equivalent of a live witness, *Binder, supra,* 769 *F.*2d at 600, and can be particularly persuasive.

Thus, first in *Michaels* and then in *Burr,* trial judges were reminded of the problems associated with a jury's unfettered access to video-recorded statements and provided specific guidance when confronted with a request to replay one, some, or all of the video recordings received in evidence. We reiterate that guidance, mindful that there is no per se rule against the replay of video recordings during jury deliberations and that the decision to replay a recording is vested in the discretion of the trial judge. *Miller, supra,* 205 *N.J.* at 122, 13 *A.*3d 873; *Burr, supra,* 195 *N.J.* at 134–35, 948 *A.*2d 627. Therefore, when confronted with a request to replay audio- or video-recorded statements of witnesses or a defendant marked as a trial exhibit and received in evidence, the trial judge must focus on fairness to the defendant. That consideration includes whether parts of his or her direct and cross examination at trial also must be replayed to provide context. Finally, under no circumstances shall the jury have unfettered

access to audio- or video-recorded statements in the jury room during deliberations. Replay in open court permits the required record of the replay to be made. *State v. Wilson,* 165 *N.J.* 657, 662, 762 *A.*2d 647 (2000).

### B.

The procedure utilized in this case did not comport with the rule announced in *Burr* and *Michaels.* This case is not one, however, in which defense counsel merely failed to object to the course selected by the trial judge. Rather, defense counsel actively encouraged the jury to review the video-recorded statements and urged the trial court to submit the video recordings to the jury. The trial error was plainly invited and does not warrant reversal of defendant's conviction.

■ Mistakes at trial are subject to the invited-error doctrine. Under that settled principle of law, trial errors that " 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal....' " *State v. Corsaro,* 107 *N.J.* 339, 345, 526 *A.*2d 1046 (1987) (alteration in original) (quoting *State v. Harper,* 128 *N.J.Super.* 270, 277, 319 *A.*2d 771 (App.Div.), *certif. denied,* 65 *N.J.* 574, 325 *A.*2d 708 (1974)). In other words, if a party has "invited" the error, he is barred from raising an objection for the first time on appeal. *See N.J. Div. of Youth & Family Servs. v. M.C. III,* 201 *N.J.* 328, 342, 990 *A.*2d 1097 (2010).

■ The doctrine acknowledges the common-sense notion that a " 'disappointed litigant' " cannot argue on appeal that a prior ruling was erroneous " 'when that party urged the lower court to adopt the proposition now alleged to be error.' " *Id.* at 340, 990 *A.*2d 1097 (quoting *Brett v. Great Am. Recreation, Inc.,* 144 *N.J.* 479, 503, 677 *A.*2d 705 (1996)). That principle is grounded in " 'considerations of fairness[,]' " *ibid.* (quoting *Brett, supra,* 144 *N.J.* at 503, 677 *A.*2d 705), and is meant to "prevent defendants from manipulating the system[,]" *State v. Jenkins,* 178 *N.J.*

347, 359, 840 A.2d 242 (2004). The doctrine is implicated "when a defendant in some way has led the court into error[,]" *ibid.*, and it has been applied "in a wide variety of situations," *M.C. III, supra,* 201 *N.J.* at 340–41, 990 A.2d 1097 (citing cases). Even if a party has "invited" an error, though, courts will not bar defendants from raising an issue on appeal if "the particular error ... cut mortally into the substantive rights of the defendant...." *Corsaro, supra,* 107 *N.J.* at 345, 526 A.2d 1046 (first alteration in original) (internal quotation marks and citation omitted). If the doctrine would "'cause a fundamental miscarriage of justice,'" it will not be applied automatically. *M.C. III, supra,* 201 *N.J.* at 342, 990 A.2d 1097 (quoting *Brett, supra,* 144 *N.J.* at 508, 677 A.2d 705).

The facts of this case fall squarely within the invited-error doctrine. It is clear from the record that defense counsel considered the video recording of defendant's interview as an element of the defense strategy. At trial, the jury viewed defendant's video-recorded statement, in which he admitted to placing his mouth on his great-niece's vagina in a "moment of weakness" and grabbing "her booty." Near the end of his statement, defendant added that he was "glad it didn't go any further th[a]n it did" and asked for forgiveness. When defendant testified, he not only denied the allegations but also asserted the confession was false. He explained that he simply repeated "everything that [the detective] said to me," and speculated he did so "[m]aybe just to hear the way it sound[ed] coming out of my mouth." During her summation, defense counsel encouraged the jury to review defendant's video-recorded statement, saying "you probably should review that tape again." Defense counsel emphasized that defendant was tired and acted "like somebody who's beaten down." She also questioned whether defendant was trying to divert the attention of investigators from the allegations as suggested by the detective in his trial testimony. She urged the jury to find that defendant was not thinking clearly during the interview.

Additionally, the trial record indicates that defense counsel, the prosecutor, and the trial judge anticipated that the jury would

view the video-recorded statements during deliberations. The trial judge mentioned at least twice during trial and once during the charge that the jury would have the opportunity to review the video-recorded statements during deliberations.

Importantly, when the jury requested to review the video-recorded statements while deliberating, neither the prosecutor nor defense counsel objected. Indeed, in response to the trial court's inquiry regarding the use of the machine in the jury room, defense counsel stated, "I consider it ... the equivalent of statement[s] on paper [that] are marked into evidence and brought back there. They might be able to look at that."

Under those circumstances, defendant invited the very error he now considers so egregious to warrant a new trial. The record demonstrates that defense counsel utilized the video recording as part of her defense strategy by encouraging the jury to thoroughly consider the video recording in its deliberations. To that end, defense counsel did not object to the jury's unfettered access to the video-recorded statements in the jury room. She even provided a rationale for support of such access. By doing so, defense counsel encouraged the trial court to grant the jury's request. *See Corsaro, supra,* 107 *N.J.* at 345, 526 *A.*2d 1046. At the very least, she consented or acquiesced to the request. *See ibid.* The trial court decided to permit the jury to review the video-recorded statements in the manner it requested only after consultation with counsel.

In applying the invited-error doctrine, we must acknowledge the strength of the evidence adduced by the State in support of defendant's conviction and the nature of the error. Here, the error did not constitute structural error and we conclude it did not compromise the fairness of the trial. Instead, the error related to the procedural protections imposed in *Burr* and, as such, does not constitute a "fundamental miscarriage of justice." *M.C. III, supra,* 201 *N.J.* at 342, 990 *A.*2d 1097 (internal quotation marks and citation omitted). In the end, the evidence of defendant's guilt and the nature of the error invited by defendant require reversal

of the judgment of the Appellate Division and reinstatement of the conviction.

We add only that our disposition should not be interpreted as a retreat from our repeated admonitions regarding the care with which trial judges and attorneys must approach the playback of video-recorded evidence. The *Burr* and *Miller* guidance has been crafted to further the interest of assuring a fair trial. We expect full and careful consideration and application of the *Burr* and *Miller* guidance in all situations in which playbacks of video-recorded exhibits or trial proceedings are conducted.

## VI.

We, therefore, reverse the judgment of the Appellate Division.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, RODRÍGUEZ (t/a), and CUFF (t/a)—7.

*Opposed*—None.