**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4855-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WAQAS IBRAR,

    Defendant-Appellant.

_____

> Argued September 15, 2020 – Decided November 25, 2020
>
> Before Judges Fisher, Moynihan, and Gummer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-07-2059.
>
> James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).
>
> Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Found guilty by jury on two counts of the second-degree vehicular homicide, N.J.S.A. 2C:11-5(a), of Tyler Sellers and Sabore Worell, who were struck and killed by the car he was driving (defendant's car) as they crossed Route 440 (the highway) at a traffic-controlled intersection, defendant Waqas Ibrar appeals from those convictions, arguing:

> IN A CASE WHERE CAUSATION WAS THE MAJOR ISSUE . . . DEFENDANT WAS DENIED A FAIR TRIAL BY THE STATE'S ACCIDENT RECONSTRUCTION EXPERT'S OPINION TESTIMONY THAT, BASED UPON HIS INTERPRETATION OF A MOTOR VEHICLE STATUTE, THE [DECEDENTS'] DISREGARD OF THE TRAFFIC SIGNALS WAS "NOT A FACTOR IN THE CRASH." (Not Raised Below) THE ERROR WAS NOT CORRECTED BY THE JURY CHARGE, WHICH FAILED TO GIVE THE JURORS GUIDANCE ON THE LEGAL RESPONSIBILITIES OF PEDESTRIANS ENTERING A CROSSWALK.
>
> A.   The Expert Testimony.
>
> B.   The Jury Charge And Summations.
>
> C.   It Was Improper For The State's Expert To Give A Legal Opinion That Under "Title 39," The [Decedents] Had The Right Of Way Notwithstanding The "Don't Walk" Signal, And That Their Disregard Of The Traffic Signal [W]as "Not A Factor" In The Crash.

A-4855-17T1

D.    The Error Was Not Corrected When The Judge Simply Read Two Sections Of [N.J.S.A.] 39:4-32 To The Jury In His Charge Without Explaining How The Laws Governing Pedestrians Crossing Intersections Applied In This Case.

In his pro se brief, defendant adds:

[DEFENDANT'S] RIGHT TO A FAIR TRIAL WAS PREJUDICED BY THE PROSECUTOR'S ELICITATION OF IMPROPER TESTIMONY FROM THE STATE'S ACCIDENT RECONSTRUCTION EXPERT AND BY THE PROSECUTOR'S IMPROPER COMMENTS DURING SUMMATION.

Unpersuaded, we affirm.

At trial, the jury considered evidence proffered in support of the parties' varied theories on the cause of the accident. The State's accident reconstruction expert,[1] Sergeant Bruce Miller, expressed the State's theory that the passenger side of defendant's car struck the decedents while they were in the center lane of the southbound side as they lawfully finished crossing the highway, where the speed limit was incorrectly posted at forty miles per hour, though the actual speed limit was fifty miles per hour. Defendant argued the decedents' crossing against the traffic signal was an intervening cause.

---

[1] Following the assistant prosecutor's voir dire, defendant did not object when the State offered its witness as an expert.

3                                                    A-4855-17T1

Miller examined defendant's car, viewed, photographed and diagramed the crash scene, met with the officers who responded to the crash scene and reviewed their reports and photographs, as well as video footage of the crash and a crash data retrieval (CDR) report of information retrieved from the event data recorder (EDR) recovered from defendant's car. He testified as to defendant's car's speed, engine RPMs, accelerator and brake compression and steering at various times relative to the deployment of the car's airbags. We synopsize that testimony in table form:

| TRG[2] (in seconds) | speed (mph) | accelerator pedal | RPMs | brake | steering[3] |
|---|---|---|---|---|---|
| -4.7 | 110.6 | compressed 100% | 5500 | off | +1.5 |
| -4.2 | 110.6 | 100% | 5500 | off | +1.5 |
| -3.7 | 110.0 | 95% | 5400 | off | +3.0 |
| -3.2[4] | | | | | |
| -2.7 | 108.7 | 100% | 5100 | off | +3.0 |

[2] Miller testified these letters stood for "[t]riggering of the airbag"; the time in seconds relates to the time the airbag triggered.

[3] Miller explained this figure was the number of degrees in which the car was being steered. A positive reading means the car was being steered toward the driver side, a negative reading meant steering toward the passenger side.

[4] At trial, -3.2 seconds was noted as a TRG entry, but the assistant prosecutor did not ask Miller about any measurements specifically relating to it.

4

| -2.2 | 107.5 | 100% | 5100 | off | +4.5 |
| --- | --- | --- | --- | --- | --- |
| -1.7 | 106.3 | 100% | 4900 | off | +3.0 |
| -1.2 | 105.6 | 13% | 5200 | off | +4.5 |
| -0.7 | 105 | 0% | 4900 | off | -4.5 |
| -0.2 | 99.4 | 0% | 4300 | on | +45.0 |
| 0.0 | 96.9 | 0% | 4100 | on | +36.0 |

Miller said he deduced defendant had not applied the brake at -0.2 seconds, but had removed his foot from the accelerator at -1.2 seconds, the point at which he testified defendant likely saw the decedents, as also evidenced by the car's "rock in the steering wheel" followed by its swerve to the left. Miller also opined that pedestrian collisions do not usually trigger airbags, and that the airbags deployed in defendant's vehicle when he struck the guardrail after he struck the decedents.

From the video, Miller perceived both decedents in the crosswalk at "about the midway point . . . on the other side of the . . . metal guardrail . . . that divides . . . the north and southbound lanes" of the highway. He calculated their walking speed at 3.75 feet per second using the time elapsed on the video's clock and the measurements of the crash site. Using that speed as a constant, he

A-4855-17T1

calculated that 13.86 seconds elapsed from the time the decedents entered the highway from the eastern side and crossed "three lanes of northbound traffic to [the point] where they were struck." Based on the speed of defendant's vehicle at the point of impact—105 miles per hour—he also calculated defendant's car was 2153 feet from the point of impact when the decedents entered the crosswalk.

Miller obtained from the New Jersey Department of Transportation the schematic for the traffic-control devices for the intersection, including the position and duration of three-cycle pedestrian signals: seven-second white "walk," thirty-one-second flashing red "don't walk" and seven-second steady red "don't walk" signals. He calculated the decedents entered the crosswalk "as the signal went to . . . flashing."

Miller testified when "[t]he walk is white, you can enter the crosswalk. When it's steady, you're not allowed by law to enter the crosswalk[,]" and when it is flashing, "[y]ou can still enter the crosswalk." He continued his colloquy with the assistant prosecutor:

> [Assistant prosecutor:] And, if you're in the crosswalk during that flashing sign, are you allowed, by the law, to continue to cross?
>
> [Miller:] Yes, you are.

6

[Assistant prosecutor:] Okay. And, what is specifically the law in that regard?

[Miller:] It is [N.J.S.A.] 39:4-32 I believe. [N.J.S.A.] 39:4-32[(c)], as in Charlie.

[Assistant prosecutor:] All right. I'm going to show you joint exhibit S-140. You just mentioned a New Jersey motor vehicle statute. And, . . . is that the statute that you were referring to?

[Miller:] Yes, it is.

[Assistant prosecutor:] And, is [(c)] located in that statute?

[Miller:] Yes, it is.

[Assistant prosecutor:] Move to publish, Your Honor, S-140.

[The trial court:] Any objection? It's agreed to?

[Defendant's attorney:] No objection.

Miller then read aloud N.J.S.A. 39:4-32(c), which provides: "A pedestrian crossing or starting across [the] intersection on a ['']go['] or green signal, but who is still within [the] crosswalk when the signal changes, shall have the right of way until the pedestrian has reached the opposite curb or place of safety." Defense counsel objected when the assistant prosecutor asked Miller what "place of safety" meant, prompting the trial court to conduct a N.J.R.E. 104 hearing.

Miller testified at the hearing that The Manual of Uniform Traffic Control Devices (the Manual) is used by law enforcement to determine a "place of safety," but could not confirm that the Manual designated a center median in a roadway as such. After the hearing, the trial court agreed with defense counsel's argument that Miller could not testify that, as a matter of law, the median barrier was not a place of safety. Defense counsel, however, "one-hundred percent" accepted that Miller could testify that the decedents had the right to get "all the way across" to the other side of the highway once they entered the crosswalk because "the law says they're entitled to go to the other end" of the crosswalk, telling the trial court he would "cross-examine [Miller] on that." Defense counsel said he was "not even going to suggest that [the decedents were] required to stop at [the] barrier."

The next trial day, Miller opined defendant's speed and lack of control were contributing factors to the crash, but the decedents' actions were not a factor because "they were in the crosswalk. They were at the halfway mark when the signal changed to 'don't walk.' And according to [N.J.S.A. 39:4-32(c)], if they're in the crosswalk once the signal changes, they have the right of way to make it to the opposite curb."

Defendant now argues Miller "testified that based on his interpretation of [N.J.S.A. 39:4-32(c)], the [decedents] had the right of way even after having entered the crosswalk in the face of a flashing '[d]on't [w]alk' signal," thus improperly giving a legal opinion to the jury—an area beyond the scope of his expertise—thereby denying defendant's right to a fair trial.

Although we review a trial court's rulings on evidence for abuse of discretion, Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382 (2010), including the grant or denial of an application to preclude expert testimony, Townsend v. Pierre, 221 N.J. 36, 52-53 (2015), here defendant did not object to Miller's opinion that the decedents had the right of way according to his interpretation of N.J.S.A. 39:4-32(c). Hence, we heed our Supreme Court's directive that,

> except in extraordinary circumstances, a claim of error will not be entertained unless it is perfectly clear that there actually was error. In other words, if upon a timely objection a different or further record might have been made at the trial level, and the claim of error might thereby have been dissipated, we will neither reverse on an assumption that there was error nor remand the matter to explore that possibility.
>
> [State v. Macon, 57 N.J. 325, 333 (1971).]

Nor will we reverse unless the error was "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. In the context of a jury trial,

9

relief will be afforded when the possibility of an unjust result is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Macon, 57 N.J. at 336.

Recognizing that it is the court's function, not that of an expert, to interpret the law, Bedford v. Riello, 392 N.J. Super. 270, 278 (App. Div. 2007), modified on other grounds, 195 N.J. 210 (2008), we determine Miller did not interpret the law. Like defendant's accident reconstruction expert, Robert Klingen, Miller cited an authority as the basis for his opinion that decedents had the right of way when crossing the highway.[5]

Neither expert gave an opinion about what the law was as much as they gave opinions based on their perceptions of what the law was. And Miller was well-crossed about his reliance on the statute in forming his opinion. As defendant states in his merits brief, "[w]hen asked [on cross-examination] about the conclusions in his report that 'driver actions [were a] major cause' and '[p]edestrian actions [were] not a factor,' Miller agreed that his conclusions were

---

[5] Klingen was asked on direct examination, "[b]ased upon your understanding of the law, would a pedestrian be permitted to enter the intersection from the curb during this flashing ['']don't walk['] signal?" Klingen answered, "[n]o," and explained his answer was based on the Manual, and that "[t]he flashing ['']don't walk['] . . . means you cannot enter the crosswalk at that point. And it's just letting you know the signal is about to change and it allows you to complete your crossing if you've already started."

based 'on the fact that [he] found that the right of way was violated by the driver'"; and he explained "that his conclusion was based on the speed of the driver as set forth in the EDR report and the 'timing sequence of the light'"; and when asked "where [he] got authority for his testimony that 'when you enter the intersection on the flashing ['']don't walk['] . . . you're permitted to enter the intersection and cross,' Miller responded, 'Title 39.'"

During summation, defense counsel stressed the importance of Miller's faulty perception of the law to his conclusion:  He "had to give you that the right-of-way was in the favor of the pedestrians . . . because otherwise causation becomes a serious problem [for the State]."  Counsel continued, rhetorically asking the jury:  "What was his interpretation of what he saw and what he was able to conclude from the evidence that he had?  He said three things."  Among the State's expert's assumptions defense counsel delineated was:  "The law says that pedestrians can enter the crosswalk on a flashing ['']don't walk.['']"  Counsel then played back Miller's testimony on that point, including Miller's concession that the Manual provided "[a] flashing upward hand symbolizing a ['']don't walk['] signal indicates . . . that a pedestrian shall not start to cross the roadway" and contrasted that testimony to the replayed testimony of Klingen.

11

We disagree with defendant's contention that Miller rendered an opinion on the law. The fact that the trial court did not sua sponte prohibit Miller from including his interpretation of the traffic statute as a basis for his opinion on the factors that caused the accident did not amount to plain error. The judge need not have, and should not have, struck what defendant claimed to be Miller's "incorrect" testimony that the pedestrians had the right of way. As defense counsel told the jury in summation: "[Y]ou ultimately have to determine who had the right[-]of[-]way." It was left for the jury to consider what caused the accident.[6]

As the jury in this case was instructed, whether the expert's reliance on, and understanding of, the law on which his opinion was based was correct was a decision it had to make in determining "whether the facts on which the answer or testimony of [the] expert is based actually exist"; the jury's acceptance or rejection of the expert testimony depended, to some extent, upon its "findings as to the truth of the facts relied upon." See Model Jury Charges (Criminal), "Expert Testimony" (rev. Nov. 10, 2003).

---

[6] Defendant does not argue that Miller improperly testified that defendant's conduct was the proximate cause of the accident, see Kreis v. Owens, 38 N.J. Super. 148, 155-56 (App. Div. 1955), or improperly compared defendant's negligence to that of the decedents, see Nesmith v. Walsh Trucking Co., 123 N.J. 547, 548-49 (1991).

Defense counsel's decision to allow the State's expert to testify about the law without objection, and his examination of the defense expert's perception of the law, also evokes our Supreme Court's ruling that when counsel acquiesces to a "mistake" or "error" at trial, such as the introduction of otherwise inadmissible evidence, that mistake is generally no longer a basis on appeal. State v. A.R., 213 N.J. 542, 561 (2013). "[I]f a party has 'invited' the error, he is barred from raising an objection for the first time on appeal." Ibid.

Defense counsel's extensive cross-examination of Miller, his introduction of expert testimony contravening the State's expert and his emphasis of the experts' contrasting theories appear part of a plan to discredit the State's evidence which included defendant's operation of his car at speeds in excess of 100 miles per hour that resulted in a horrific collision with the decedents, whose bodies were thrown 148.68 feet and 135.67 feet, respectively, from the crosswalk.[7] Any error—which we do not suggest occurred—is disqualified under the invited-error doctrine because defendant "induced, encouraged in or consented to" it, see ibid., and he cannot now "manipulat[e] the system" and lead the court into error in pursuit of a failed trial tactic, see id. at 561-62.

---

[7] Worrell's severed leg came to rest 212.47 feet from the area of impact.

A-4855-17T1

Defendant also argues the trial court's jury instructions "fail[ed] to address the contested issue" of whether the decedents, "who had entered the crosswalk on a flashing '[d]on't [w]alk' signal, still had the right[-]of[-]way." Specifically, defendant contends the trial court should have instructed the jury (1) on that section of the Manual that proscribes pedestrians from starting across a roadway on a flashing "don't walk" signal, but allows pedestrians to continue crossing if they started to cross on a steady walk signal, and (2) on N.J.S.A. 39:4-32(d), which provides: "No pedestrian shall leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield or stop."

Although defendant relies on State v. Parkhill, 461 N.J. Super. 494 (App. Div. 2019), in which we held the trial court committed plain error by failing to fully instruct the jury on causation and the motor vehicle provision regulating pedestrian crossings outside a crosswalk, id. at 497, the trial court in this case delivered both prongs of the causation instruction to the jury, see id. at 503-04, as well as instructions on N.J.S.A. 39:4-32(a) and (c), both of which regulate pedestrian crosswalk crossings. Indeed, defense counsel anticipated the instructions and addressed both prongs in summation.

14

Reading the charge as a whole, see State v. Adams, 194 N.J. 186, 207 (2008), the instruction allowed the jury to consider whether "but-for" defendant's conduct the decedents' deaths would not have occurred and whether the decedents' volitional act of crossing the highway rendered the result of defendant's actions "too accidental in its occurrence or too dependent on another's volitional act to have a just bearing on [defendant's] liability."  See State v. Eldridge, 388 N.J. Super. 485, 500 (App. Div. 2006) (emphasis in original); see also N.J.S.A. 2C:2-3(c).

We agree with the trial court's decision not to include the Manual's provisions in the charge.  It was not the law.  Defendant's expert cited the Manual, published by the United States Department of Transportation, Federal Highway Administration, to discredit the State's expert.  The trial court correctly refused to give the Manual status by quoting it, an act that would have invaded the jury's province to analyze the experts' bases of opinion.

We also determine the statutes the trial court quoted in its charge amply provided the jury with the law necessary to determine who had the right-of-way.  Subsection (a) pertained to the prohibition against crossing against a stop signal at a crosswalk.  Subsection (c) pertained to pedestrians "crossing or starting across the intersection on a 'go' or green signal."  Because the decedents were

already in the highway—whether it was against or with a traffic signal—subsection (d) is inapposite because it pertains to pedestrians leaving a curb or other place of safety and walking into the path of a vehicle that is so close so as to make stopping or yielding impossible. Those were not the circumstances of this case.[8]

The balance of defendant's arguments regarding the jury charge are without sufficient merit to warrant discussion. R. 2:11-3(e)(2). The trial court was not required to make defendant's arguments in charging the jury. See State v. Pleasant, 313 N.J. Super. 325, 333 (App. Div. 1998), aff'd, 158 N.J. 149 (1999) ("[A] defendant is not entitled to have the jury instructed in his own words . . . . He is only entitled to an adequate instruction of the law."). Further, although defendant argues the trial court's response to the jury's request to "explain causation"' was insufficient, the court responded to the exact request made by the jury. See State v. Parsons, 270 N.J. Super. 213, 221 (App. Div. 1994) ("An appropriate judicial response [to a juror's request for clarification] requires the [trial court] to read the question with care to determine precisely

---

[8] We note that defendant, in his merits brief, acknowledges that although his counsel proposed that subsection (d) be included in the charge, he added that they would "deal with" that issue later; we do not see that defendant later raised the issue or explained why it was applicable.

16

what help is needed [and then respond accordingly]."). The jury did not ask for "reference[s] to the facts of the case," which defendant contends should have been included in the court's response.

We fully appreciate a trial court's duty to mold jury instructions to the facts of the case, Toto v. Ensuar, 196 N.J. 134, 144 (2008), and tailor the charge to enable the jury to review the evidence in the context of the parties' theories, Reynolds v. Gonzalez, 172 N.J. 266, 288-89 (2002). But, during the charge conference, defendant expressed that there was no need for that exercise:

> I understand there's language in the model jury charge that the [c]ourt can supplement each version of the State's version of the events and the defense version of the events. Neither one of us are asking the [c]ourt to do that. So I don't think we need to do that in this particular case. I think it's pretty clear what both sides are arguing.

Finally, in his pro se brief defendant argues the assistant prosecutor's summation deprived defendant of a fair trial because he: misrepresented and mischaracterized the defense expert's testimony and disparaged him; provided the jury with an improper factual example of causation; wrongfully implied and invited the jury to speculate, without evidential support, defendant was racing; improperly urged the jury to find defendant guilty because he lied to police; and implied there was additional evidence to prove defendant's guilt. Defendant

17

argues these averred improprieties cumulatively denied defendant the right to a fair trial.

We do not discern the same freighted weight to the assistant prosecutor's remarks as does defendant. The comments were sufficiently related to the evidence presented at trial and were within the bounds of the considerable leeway afforded prosecutors in making "vigorous and forceful closing argument[s] to the jury." See State v. Harris, 141 N.J. 525, 559 (1995).

Just as defense counsel attempted to disparage the State's expert's causation testimony, the assistant prosecutor attempted to discredit the defense expert's opinion and basis therefor. In this battle of the experts, we discern no impropriety in the State's attempt to "balance the scales" regarding the expert testimony. See State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001). The assistant prosecutor's comments pertained to the evidence presented and the rational inferences that could be drawn therefrom.

Defendant also argues the assistant prosecutor's attempt to exemplify causation misrepresented the law. Defense counsel's objection interrupted the assistant prosecutor's example of someone throwing a brick from an overpass onto a speeding car that then crashes into other cars. The assistant prosecutor never completed that part of his argument, agreeing with the trial court to "move

on" with his summation. The trial court instructed the jury that the court was the sole source of the law and that the jury should disregard any contrary instruction.

The assistant prosecutor's comment about defendant's friend trailing behind from the restaurant they simultaneously left prior to the crash pertained to a portion of defendant's initial statement to police.[9] That statement supported the State's contention that defendant was traveling much faster than his friend who arrived at the accident site after defendant, contradicting defendant's statement that his speed was fifty to fifty-five miles per hour. The assistant prosecutor did not ascribe the nefarious interpretation of that comment advanced by defendant, that defendant was "engaged in some sort of competitive speeding, racing[] or other orchestrated untoward activity."

The assistant prosecutor's argument to the jury that if defendant lied to police about his speed, he is guilty, connected defendant's attempt to evade responsibility with his consciousness of guilt. The assistant prosecutor prefaced that remark by stating the untruth was "one last bit of evidence" to meet the State's burden of proving defendant guilty beyond a reasonable doubt. The

---

[9] Defendant told police that after eating at the restaurant, they—everyone in his part—left and that his friend was following him, "going in the same direction."

comment, viewed in context, see State v. Darrian, 255 N.J. Super. 435, 454-55 (App. Div. 1992), did not invite jury speculation or suggest unpresented evidence.

Save for the objection to the assistant prosecutor's causation example, defendant did not object to the remarks now challenged, "suggest[ing] that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Frost, 158 N.J. 76, 84 (1999). "The failure to object also deprive[d] the court of an opportunity to take curative action." Ibid. We determine none of the assistant prosecutor's remarks warrant reversal because, individually or cumulatively, they were not so egregious to substantially prejudice defendant's right to a fair trial. State v. Timmendequas, 161 N.J. 515, 575 (1996).

The balance of defendant's arguments lacks sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4855-17T1