**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5128-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DASHON T. ROSS,
a/k/a SAHEED MILFORD,
DWIGHT SMITH, DASHONE
THOMAS, and SAHEID
MILLFORD,

    Defendant-Appellant.

_____

        Submitted March 22, 2021 – Decided June 21, 2021

        Before Judges Fasciale and Susswein.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 16-06-1805 and 16-06-1808.

        Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Valeria Dominguez, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from his jury trial convictions for drug and gun offenses and resisting arrest. He contends the trial judge committed several errors, all of which are raised for the first time on appeal. After carefully reviewing the record in light of the arguments of the parties and the applicable legal principles, we affirm.

We briefly summarize the procedural history and the relevant facts that were adduced by the State at trial. In June 2016, a grand jury returned an indictment charging defendant with third-degree simple possession of a controlled dangerous substance (CDS), heroin, N.J.S.A. 2C:35-10(a); third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3); third-degree possession of a CDS with intent to distribute while within 1,000 feet of a school, N.J.S.A. 2C:35-7(a); second-degree possession of a CDS with intent to distribute while within 500 feet of certain public property, N.J.S.A. 2C:35-7.1(a); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); fourth-degree unlawful possession of hollow nose bullets, N.J.S.A. 2C:39-3(f); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and

2

fourth-degree tampering with evidence, N.J.S.A. 2C:28-6(1). The grand jury returned a separate indictment also charging defendant with second-degree certain persons not to have firearms or ammunition, N.J.S.A. 2C:39-7(b)(1).

On October 12, 2018, the trial judge denied defendant's motion to suppress evidence.[1] On October 15, 2018, the judge granted the State's motion to dismiss the three counts charging possession of a CDS with intent to distribute.

Defendant was initially tried by a jury over the course of five non-consecutive days in October 2018. During this first trial, the State presented a store security video recording of a man discarding a firearm on a store shelf. A State Police witness referred to the man depicted in the video as "the defendant," prompting an objection from defense counsel. The trial judge sustained the objection. The jury found defendant guilty of possessing heroin and resisting arrest. The jury was unable to reach a verdict on the counts charging unlawful possession of a handgun, unlawful possession of hollow nose bullets, and tampering with evidence. Because the jury failed to reach a verdict on whether defendant possessed the firearm, the jurors were not asked to consider the bifurcated certain persons charge.

---

[1] Defendant did not appeal the denial of the motion to suppress. Accordingly, the lawfulness of the actions taken by the state troopers is not before us in this appeal and we offer no opinion in this regard.

A second jury trial convened over the course of five non-consecutive days in March 2019. Unlike the first trial, defense counsel did not object when troopers again referred to the man depicted in the security video as "the defendant." The second jury found defendant guilty of unlawful possession of a handgun and tampering with evidence. The jury acquitted defendant of unlawful possession of hollow nose bullets. The trial judge then instructed the jury to consider the bifurcated count charging defendant as a certain person prohibited from possessing a firearm by reason of a prior conviction. The jury convicted defendant on that charge.

At the sentencing hearing, the trial judge granted the State's motion for a discretionary extended term of imprisonment as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). On the second-degree unlawful possession of a firearm conviction, the judge imposed a ten-year prison term—the lowest possible term in the extended-term range—with a five-year period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:39-5(i). The sentences imposed on the other convictions were ordered to run concurrently.

The following facts were elicited at the second trial. State Trooper Michael Savnik was dispatched to investigate a report of a man fleeing the scene of a car accident in the area of Elizabeth Avenue and Meeker Avenue in Newark.

A-5128-18

Trooper Savnik, Trooper Joshua Morrison, and two other troopers went to a grocery store on Elizabeth Avenue to look for the fleeing suspect. Once inside the store, Trooper Savnik "locked eyes" with a man who then turned away and walked down the back aisle and out of the trooper's view. That man was wearing "a black and gray jacket with [the word] 'Birds' written across the chest, . . . an S on the right sleeve, a gray hooded sweatshirt underneath that jacket with the hood up, blue jeans, black sneakers, and orange shoelaces." Troopers Savnik and Morrison followed the individual's path toward the back of the store. They eventually confronted him and initiated an investigative detention and protective frisk for weapons. Both troopers testified that during this encounter, they were standing approximately one to two feet away while facing the man and thus could clearly see his face. The troopers released the man because they saw no signs of injury that would link him to the reported car accident and found no weapons on his person.

The troopers returned to the store approximately thirty minutes later in response to a call by the owner, who reported that a gun had just been found on a shelf. Trooper Savnik secured a handgun loaded with seven hollow nose bullets and six metal jacket bullets. The weapon was hidden behind cans of dog food.

A-5128-18

The store owner provided the troopers with a store surveillance video recording that depicted how and when the gun was discarded on the shelf. The video depicts a man walk towards the back of the store, turn the aisle, adjust his waistband, produce a black handgun from his waistband, place the handgun on the rear shelf by the dog food cans, and then turn back to the front of the store. At that point, the man was stopped by Troopers Savnik and Morrison. The video captures the investigative detention and shows that the man detained by the troopers was the same person who placed the handgun on the back shelf behind the dog food cans.

State police circulated a flyer depicting the suspect taken from a still image from the surveillance video. On the day following the incident, Detective Sergeant Thomas Kelshaw reported that he saw an individual matching the picture in the flyer. Trooper Morrison responded to the scene and recognized defendant as the individual who had been stopped the day before inside the store. Defendant attempted to run away but was quickly apprehended. Trooper Savnik arrived shortly thereafter. Both troopers testified that they recognized defendant's face from their encounter inside the store the previous day. They also testified that at the time of the arrest, defendant was wearing the same

6

distinctive jacket that had been worn by the individual they briefly detained in the store the day before.

Trooper Morrison administered Miranda[2] warnings and conducted a search of defendant's person incident to his arrest.  That search revealed twenty-seven wax folds of heroin in his possession.  Trooper Morrison testified that when defendant was later taken to a holding cell, he stated, "[h]ow are you going to get me on some shit I did yesterday?"  No fingerprints or DNA were found on the weapon recovered from the store.

Defendant raises the following contentions for our consideration:

POINT I

THE PROSECUTOR ELICITED IMPROPER LAY-WITNESS OPINION TESTIMONY AS TO THE CONTENT OF THE SURVEILLANCE VIDEO AND THE IDENTITY OF THE MAN IN THE BODEGA. (Not raised below).

POINT II

THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON HOW TO CONSIDER THE VIDEO PLAYED BACK DURING DELIBERATIONS, AS REQUIRED BY STATE V. MILLER.  (Not raised below).

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5128-18

POINT III

THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE STATEMENT ROSS ALLEGEDLY MADE TO TROOPER MORRISON, AS REQUIRED BY STATE V. KOCIOLEK. (Not raised below).

POINT IV

THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS DENIED DEFENDANT OF A FAIR TRIAL. (Not raised below).

POINT V

IN THE ALTERNATIVE, THE MATTERS MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT IMPROPERLY DOUBLE-COUNTED DEFENDANT'S PRIOR RECORD.

I.

We first address defendant's contention the trial judge committed plain error by allowing Troopers Morrison and Savnik to refer to the man depicted in the surveillance video as "the defendant," and by failing to sua sponte provide a curative instruction to the jury. Defendant argues these references constitute inappropriate lay opinion testimony as to the identity of the man depicted in the video recording.

In State v. Singh, our Supreme Court recently addressed whether the trial court committed plain error by allowing a police witness to make references to

8

"the defendant" while narrating the surveillance video recording of a robbery for the jury. 245 N.J. 1 (2021). The Court in <u>Singh</u> held that the police witness's references to the defendant as the man depicted in the surveillance video were improper but did not amount to plain error capable of producing an unjust result in light of the other evidence adduced by the State. <u>Id.</u> at 18.

The Court began its analysis by examining the purpose and boundaries of N.J.R.E. 701, which provides:

> If a witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences may be admitted if it:
>
> (a) is rationally based on the witness's perception; and
>
> (b) will assist in understanding the witness's testimony or determining a fact in issue.

The Court in <u>Singh</u> stressed, "[w]e have made clear that '[t]he purpose of N.J.R.E. 701 is to ensure that lay opinion is based on an adequate foundation.'" <u>Id.</u> at 14 (alteration in original) (quoting <u>State v. Bealor</u>, 187 N.J. 574 (2006)). "Accordingly, lay opinion testimony can be admitted only 'if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function.'" <u>Ibid.</u> (quoting <u>State v. McLean</u>, 205 N.J. 438, 456 (2011)).

9

The first prong of N.J.R.E. 701 requires the witness's opinion testimony to be based "on the witness's 'perception,' which rests on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." 245 N.J. at 14. "[U]nlike expert opinions, lay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." Id. at 14–15 (quoting McLean, 205 N.J. at 460).

The second prong of N.J.R.E. 701 requires that the witness's opinion testimony be "limited to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." Id. at 15 (quoting McLean, 205 N.J. at 458).

In State v. Lazo, the Court held that "lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'" 209 N.J. 9, 22 (2012) (quoting United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005)). The Court in Singh again embraced Beck's reasoning, noting that

> Whether that opinion is "helpful[]" . . . depends on various factors including the witness's familiarity with the defendant's appearance when the crime was committed, or with the defendant's manner of dress, if relevant, whether the defendant disguised [his or her] appearance during the offense or altered [his or her]

10

looks before trial, and "whether the witness knew the defendant over time and in a variety of circumstances."

[Singh, 245 N.J. at 16 (quoting Lazo, 209 N.J. at 12, and Beck, 418 F.3d at 1015).]

In Lazo, the Court further noted that when evaluating whether a law enforcement officer can provide a lay opinion on identification, a reviewing court may also consider whether there are additional witnesses available to identify the defendant at trial. Lazo, 209 N.J. at 23 (citing United States v. Butcher, 557 F.2d 666, 670 (9th Cir. 1977) (allowing testimony but noting that "use of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution") and State v. Carbone, 180 N.J. Super. 95, 97–100 (Law Div. 1981) (allowing lay witness testimony and noting lack of available eyewitness identification, change of defendant's appearance, and familiarity with his appearance at time of crime)).

We next summarize the facts in Singh to highlight the similarities to and differences from the situation that developed in the case now before us. In Singh, a man wearing dark clothing and white-soled shoes "with three stripes going down the side" robbed a gas station with a machete. 245 N.J. at 6, 8. The robbery was captured on the store's video surveillance system. Id. at 6. Officers

dispatched to the scene canvassed the neighborhood and encountered a man wearing dark clothing who turned and ran at the sight of police. Ibid. When they lost sight of that man, the pursuing officers called for backup as they continued their search. Ibid. Eventually one of the original pursuing officers confronted a man in a nearby backyard who was wearing dark clothing and was sweating and panting heavily. Ibid. A detective responding to the request for backup heard the arresting officer shouting commands at the suspect and assisted in making the arrest. Ibid. Police searched the vicinity after the arrest and found a machete and a plastic bag containing the proceeds of the robbery. Id. at 7.

The State's case in Singh rested primarily on the testimony of the gas station clerk, the arresting officer, and the detective who assisted with the arrest. Id. at 7–10. At trial, the detective testified that the video depicted the robber wearing distinctive shoes with "white soles at the bottom, with three stripes going down the side." He also testified that the defendant was wearing similar shoes at the time of his arrest. Id. at 8. On appeal, the defendant claimed that permitting the detective's testimony as to the content of the surveillance video and the identity of the depicted robber was plain error. The Supreme Court affirmed the conviction, concluding that,

12

although it was error for [the detective] to refer to an individual depicted in the surveillance video as "the defendant" in his narration of that video, that error was harmless given the fleeting nature of the comment and the fact that the detective referenced defendant as "the suspect" for the majority of his testimony. Moreover, we conclude that [the detective's] testimony that the sneakers he saw in the video were similar to those he saw defendant wearing the night he was arrested was proper lay opinion testimony under N.J.R.E. 701.

[Id. at 17–18.]

In reaching this conclusion, the Court reaffirmed the well-established principle that an error not challenged at trial will be disregarded "unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." Id. at 13. "Plain error is a high bar and constitutes error not properly preserved for appeal but of a magnitude dictating appellate consideration." Ibid. The Court nonetheless stressed that the detective's references to the defendant when narrating the video were inappropriate. Id. at 18. The Court admonished that such references, "even when, as here, they are used fleetingly and appear to have resulted from a slip of the tongue—should be avoided in favor of neutral, purely descriptive terminology such as 'the suspect' or 'a person.'" Ibid.

We believe the circumstances in the present case are distinguishable from Singh in an important respect. Notably, in this case, the troopers themselves

13

appeared in the surveillance video they narrated. They both made in-court identifications of defendant as the man they detained in the grocery store the day before defendant was arrested. Both troopers also testified that the man they detained in the store was wearing the same distinctive clothing that the defendant was wearing at the time of his arrest the following day. Accordingly, even if the troopers had not referred to the person depicted in the video as "the defendant," the jury would have been aware that the troopers believed that defendant was the person who appeared with them in the surveillance video recording.

In this instance, moreover, the State Police witnesses were familiar with defendant from two separate encounters: the initial investigative detention recorded on the surveillance video, and the arrest made the next day. Thus, at the time they testified at trial, both witnesses had greater contact and familiarity with defendant than the detective who narrated the video recording in Singh. See Lazo, 209 N.J at 22 ("Lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'"). We further note that in this

case, unlike in Singh, no other witnesses were available to identify the person shown in the video recording.[3] See id., 209 N.J. at 23.

We acknowledge that in the case before us, the troopers' references to the defendant while narrating the store security video were neither fleeting nor a slip of the tongue as in Singh. Rather, these references were repeated on multiple occasions. We emphasize, however, that defense counsel at the second trial made a conscious decision to not object to the trooper's references to the man depicted in the surveillance video as the defendant.[4] In Singh, the Court

---

[3] Law enforcement was unable to contact or locate the grocery store owner to testify, as he had since closed his business by the time defendant was tried.

[4] During a sidebar conference, defense counsel told the trial judge:

> First of all, I haven't objected to [Trooper Savnik] characterizing the person in those photographs as the defendant but I believe that's for the jury to decide and I would like to have an instruction to them as some point but he didn't actually see anybody take a handgun out of their waist and put it on the shelf and he's testified to that and I don't believe that you can discern what's in that person's hand in that photograph. So, he's making an assumption that, first of all, because he believes it's Mr. Ross and, second of all, that because a handgun was found there by the owner at some later point that that's Mr. Ross doing it. I don't think he has sufficient knowledge to say that that's Mr. Ross putting that handgun on the shelf. He doesn't really know how that got there at all, he's making

"cautioned that rerunning a trial when the error could easily have been cured on request would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal." 245 N.J. at 13. It also is well-settled that trial errors that "were induced, encouraged, or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal . . . ." State v. Corsaro, 107 N.J. 339, 345 (1987); see also State v. A.R., 213 N.J. 542, 561 (2013) ("Mistakes at trial are subject to the invited-error doctrine.").

We believe the judge at the second trial allowed the troopers to make repeated references to the person depicted in the video as "the defendant" because defense counsel expressly told the judge that he was refraining from making an objection. In these circumstances, defendant is now hard-pressed to rely on the number of references that were made as a basis for distinguishing Singh and finding reversible error. We are satisfied that the troopers' references to the defendant while narrating the surveillance video were not capable of producing an unjust result. R. 2:10-2.

---

an assumption based on what he learned later, that there was, in fact, a handgun there.

II.

We turn next to defendant's contention the trial judge erred by failing to sua sponte issue a limiting instruction to the jury when the jury requested a playback of the store surveillance video. This contention lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2). The trial judge properly complied with the jury's request and played back the surveillance video recording in open court with both counsel present. Defense counsel did not object to the playback and did not request any special jury instructions.

In State v. Miller, our Supreme Court remarked,

> Judges should take precautions to prevent juries from placing undue emphasis on the particular [audio/video] testimony that is replayed. . . . To that end, at the time the testimony is repeated, judges should instruct jurors to consider all of the evidence presented and not give undue weight to the testimony played back.
>
> [205 N.J. 109, 123 (2011) (citing State v. Michaels, 264 N.J. Super. 579, 644–45 (App. Div. 1993)).]

Although a supplemental instruction would have been appropriate had it been requested, we do not believe that the failure to issue special instructions constitutes plain error. See State v. Wakefield, 190 N.J. 397, 473 (2007) (holding that under Rules 1:7-2 and 2:10-2, "the failure to object to a jury instruction requires review under the plain error standard"); see also State v.

17

Montalvo, 229 N.J. 300, 320 (2017); State v. Singleton, 211 N.J. 157, 182 (2012) (holding where a defendant does not object to the jury charge, "there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case").

We stress that the playback did not involve a witness's testimony or a recording of a witness' statement. Cf. State v. Burr, 195 N.J. 119, 134 (2008) ("The videotaped pretrial statement at issue [is] significantly different from a demonstrative exhibit. Although it is evidence, it is also testimony. It is, in effect, a hybrid of the two. Unlike a demonstrative exhibit, the videotape contains hearsay statements offered for the truth of the matter asserted."). Rather, the video recording in this instance was essentially a demonstrative exhibit. The jury was properly instructed, moreover, that it should consider all relevant evidence and that it was for it to decide the weight to give to evidence. In these circumstances, the failure to provide the jury additional instruction on how to consider the unnarrated surveillance video was not capable of producing an unjust result. R. 2:10-2.

III.

As we have noted, Trooper Morrison testified that as he was taking defendant to a holding cell, defendant remarked, "[h]ow are you going to get me

18

on some shit I did yesterday?" Defendant contends for the first time on appeal that the trial court erred in failing to instruct the jury to exercise caution with respect to defendant's statement in accordance with State v. Hampton and State v. Kociolek.[5]

---

[5] State v. Hampton, 61 N.J. 250 (1972); State v. Kociolek, 23 N.J. 400 (1957). The Model Jury Charge for statements attributed to a defendant provides in relevant part:

> In considering whether or not an oral statement was actually made by the defendant, and, if made, whether it is credible, you should receive, weigh[,] and consider this evidence with caution based on the generally recognized risk of misunderstanding by the hearer, or the ability of the hearer to recall accurately the words used by the defendant. The specific words used and the ability to remember them are important to the correct understanding of any oral communication because the presence, or absence, or change of a single word may substantially change the true meaning of even the shortest sentence.
>
> . . . .
>
> In considering whether or not the statement is credible, you should take into consideration the circumstances and facts as to how the statement was made, as well as all other evidence in this case relating to this issue.
>
> If, after consideration of all these factors, you determine that the statement was not actually made, or that the statement is not credible, then you must

In State v. Baldwin, we explained that Hampton "require[s] the trial court to instruct the jury to decide whether a defendant's out-of-court statement is credible only in a case where there has been a pretrial hearing involving the admissibility of the statement on the grounds of an alleged violation of the defendant's Miranda rights or involuntariness." 296 N.J. Super. 391, 397 (App. Div. 1997). We concluded in Baldwin that when "an alleged oral inculpatory statement was not made in response to police questioning, and there is no genuine issue regarding its contents," the court is not required to give special cautionary instructions "because the only question the jury must determine is whether the defendant actually made the alleged inculpatory statement." Id. at 401–02.

<hr>

disregard the statement completely.

If you find that the statement was made and that part or all of the statement is credible, you may give what weight you think appropriate to the portion of the statement you find to be truthful and credible.

[Model Jury Charges (Criminal), "Statements of Defendant" (rev. June 14, 2010).]

In this instance, defendant never moved to suppress the rhetorical question he posed to Trooper Morrison. Furthermore, although defendant was clearly in custody, his inculpatory utterance was not in response to police questioning.

We thus turn our attention to whether the trial judge was obligated to give a special cautionary instruction pursuant to the rationale undergirding Kociolek. The Court in Kociolek, quoting Wigmore on Evidence, §§ 1056, 2094 (3d ed. 1940), acknowledged:

> there is a general distrust of testimony reporting any extra-judicial oral statements alleged to have been made, including a party's admissions; the great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been heard, have never been ignored; but an antidote is constantly given by an instruction to the jury against trusting overmuch the accuracy of such testimony.
>
> [23 N.J. at 421 (internal quotation marks omitted).]

Our Supreme Court recognized that an out-of-court inculpatory statement purportedly made by a defendant can be "dangerous" evidence, "first, because it may be misapprehended by the person who hears it; secondly, it may not be well-remembered; thirdly, it may not be correctly repeated." Id. at 422 (citations omitted).

Our decision in Baldwin addressed when a cautionary jury instruction must be given under the Kociolek doctrine and our analysis in that case is

21

instructive for purposes of the present appeal. The State in <u>Baldwin</u> presented evidence in a murder trial supporting the identification of the defendant as the assailant, including testimony from three eyewitnesses and three inculpatory out-of-court statements purportedly made by the defendant. <u>Baldwin</u>, 296 N.J. Super. at 395. Baldwin argued that a trial court is obligated to provide cautionary instructions whenever evidence of a defendant's allegedly inculpatory out-of-court statement is proffered. <u>Ibid.</u> We rejected any such per se rule. We concluded "the need for the kind of special cautionary instruction suggested in <u>Kociolek</u> may turn on whether there is any genuine dispute as to the precise contents of an alleged oral statement." <u>Id.</u> at 400–01.

We have carefully reviewed the trial record in this case, including the opening and closing statements by defense counsel. Our review confirms that defendant did not contest the content or accuracy of the remark he made to Trooper Morrison.[6] Accordingly, the trial judge was not obligated to sua sponte issue a <u>Kociolek</u> instruction.

Finally, we emphasized in <u>Baldwin</u> that there was no precedential authority for the proposition that the failure to give an unrequested <u>Kociolek</u>

---

[6] The record shows that the prosecutor referred to defendant's remark in his summation.

instruction constitutes plain error. Id. at 400. Defendant cites no case decided after Baldwin holding that the failure to sua sponte provide a Kociolek instruction rises to the level of plain error. Thus, even assuming for the sake of argument that it was error to fail to provide a cautionary instruction with respect to defendant's rhetorical remark, that failure does not rise to the level of plain error. See State v. Jordan, 147 N.J. 409, 430 (1997) (neither the failure to provide a Hampton or a Kociolek charge, whether "individually or in combination" constitutes plain error per se). The possibility of injustice must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). After carefully reviewing the entire record, we believe the trial judge's failure to give the unrequested instruction was not capable of producing an unjust result. See R. 2:10-2; Montalvo, 229 N.J. at 320.

IV.

We need only briefly address defendant's contention that his claimed trial errors collectively created such severe prejudice as to warrant a new trial. See State v. Jenewicz, 193 N.J. 440, 473 (2008) ("Even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require

23

reversal."). The fact that defense counsel made no contemporaneous objections to the errors now alleged on appeal "reveals that 'in the atmosphere of the trial the defense did not believe that the [alleged errors] were prejudicial.'" State v. Marks, 201 N.J. Super. 514, 534 (App. Div. 1985) (quoting State v. Wilson, 57 N.J. 39, 51 (1970)); see also State v. Nelson, 173 N.J. 417, 471 (2002) (quoting Macon, 57 N.J. at 333) ("[I]t [is] fair to infer from the failure to object below that in the context of the trial the error was actually of no moment.") (second alteration in original).

The State's case hinged on the surveillance video that showed the culprit discarding the handgun on the store shelf. We are satisfied that none of the alleged trial errors prevented the jury from justly concluding that defendant was the person shown in that video.

## V.

Finally, defendant contends the trial judge at sentencing impermissibly "double counted" his criminal history by using his prior convictions to invoke an extended term as a persistent offender under N.J.S.A. 2C:44-3(a) and also as the basis for finding aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("The risk that the defendant will commit another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("The extent of the defendant's prior criminal record and the seriousness of the

24

offenses of which [the defendant] has been convicted"); and nine, N.J.S.A. 2C:44-1(a)(9) ("The need for deterring the defendant and others from violating the law").

We begin our analysis by acknowledging that "[o]ur role in reviewing a sentence imposed by a trial judge is limited." State v. L.V., 410 N.J. Super. 90, 107 (App. Div. 2009). We review only

> (1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a clear error of judgment that it shocks the conscience.
>
> [State v. Megargel, 143 N.J. 484, 493 (1996) (citing State v. Roth, 95 N.J. 334, 363–65 (1984)).]

To be eligible for a discretionary extended term as a persistent offender, a defendant must be:

> a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously been convicted on at least two separate occasions of two crimes, committed at different times, when he was at least [eighteen] years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.
>
> [N.J.S.A. 2C:44-3(a).]

In State v. Tillery, our Supreme Court recently considered the double-counting argument that defendant now raises. 238 N.J. 293, 325–26 (2019). The defendant in that case "object[ed] to the court's 'duplicative' reliance on his criminal record both to deem him statutorily eligible for an extended term and to find aggravating factors six and nine." Ibid. The Supreme Court resolutely rejected that argument:

> We find no error in the trial court's reliance on defendant's criminal record both to determine defendant's "persistent offender" status under N.J.S.A. 2C:44-3(a) and to support the court's finding of aggravating factors three, six, and nine. Indeed, in our decision in [State v. Pierce, 188 N.J. 155, 168 (2006)], we envisioned that the defendant's criminal record may be relevant in both stages of the sentencing determination. We held that "[a] sentencing court must first, on application for discretionary enhanced-term sentencing under N.J.S.A. 2C:44-3(a), review and determine whether a defendant's criminal record of convictions renders him or her statutorily eligible." If so, "whether the court chooses to use the full range of sentences opened up to the court is a function of the court's assessment of the aggravating and mitigating factors, including the consideration of the deterrent need to protect the public." In that crucial inquiry, defendant's prior record is central to aggravating factor six, N.J.S.A. 2C:44-1(a)(6), and may be relevant to other aggravating and mitigating factors as well.
>
> Accordingly, the trial court properly considered defendant's criminal record in deciding defendant's statutory eligibility for an extended term, and in

26

weighing aggravating and mitigating factors to determine that such a term was warranted.

[Id. at 327–28 (internal citations omitted).]

We add that in the present case, defendant has previously been convicted of four qualifying convictions, any two of which would satisfy the prerequisite for imposing an extended term as a persistent offender. Furthermore, the trial judge did not commit error by considering defendant's criminal history in the context of multiple aggravating factors. As the Court expressly recognized in Tillery, a defendant's criminal history is not only relevant to the application of aggravating factor six, but also "may be relevant to other aggravating and mitigating factors as well." Id. at 328. Indeed, the Court in Tillery upheld the trial court's application of the defendant's criminal history in finding the very same aggravating factors in the present appeal. We note, finally, the judge imposed a prison term at the bottom of the second-degree extended term range. In these circumstances, defendant has not shown that the trial judge abused her discretion in applying and weighing the aggravating factors. Nor does the sentence in this case shock the judicial conscience. Roth, 95 N.J. at 365.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5128-18